Richard W. **FINLEY**, Appellant,

v.

**V.T. STEENKAMP, R.N., Salitha Jose and Vivra Renal Care d/b/a Community Dialysis Services of Fort Worth,** Appellees.

No. 2–99–127–CV.

Court of Appeals of Texas, Fort Worth.

May 18, 2000.

---

Manuel Rios, Dallas, for Appellant.

McManemin & Smith, Daniel P. Callahan, Dallas, for Appellee.

PANEL B: DAY, LIVINGSTON, and RICHARDS, JJ.

## OPINION

SAM J. DAY, Justice.

### I. INTRODUCTION

In this appeal, we must decide whether giving presuit notice of a health care liability claim to a health care provider as required by section 4.01 of the Medical Liability and Insurance Improvement Act ("the Act") tolls the statute of limitations applicable to a non-health care provider defendant on a related negligence claim. TEX.REV.CIV. STAT. ANN. art. 4590i, § 4.01(a), (c) (Vernon Supp.2000). We must also determine whether the trial court abused its discretion in dismissing a health care liability claim with prejudice after the plaintiff failed to timely file an expert report with the defendant health care provider, as required by section 13.01 of the Act. *Id.* § 13.01(d), (e).

We affirm.

### II. BACKGROUND

In 1995, Appellant Richard W. Finley suffered from renal disease and received hemodialysis treatment at Appellee Vivra Renal Care, Inc. d/b/a Community Dialysis Services of Fort Worth ("CDS"), a dialysis center. In July 1995, Finley underwent surgery to revise the dialysis access in his left arm. On August 7, 1995, Finley went to CDS for his scheduled hemodialysis treatment. Finley was attended to by Appellee Salitha Jose, a dialysis technician employed by CDS. Appellee Terry Steenkamp, a charge nurse employed by CDS, was Jose's supervisor. Steenkamp did not inform Jose of Finley's recent graft revision. When Jose began Finley's treatment, she mistakenly inserted the dialysis needle into the non-functional graft rather than the new one. Blood began leaking into the soft tissue of Finley's arm and he immediately complained of pain. Finley was later discharged with instructions to apply ice to his arm. The incident was not reported to a physician.

After Finley returned home, his arm continued to swell and hurt. That evening, the pain in Finley's arm became so severe that he went to the emergency room. An emergency room physician evaluated Finley and admitted him to the hospital. Tests conducted the following day revealed that the revised graft in Finley's left arm could no longer be used for dialysis treatment. Finley was then taken to Harris Methodist Hospital where he received a catheter in his jugular vein. The blood loss into the hematoma area of Finley's left arm caused him to become anemic, requiring a blood transfusion. Additionally, Finley's left arm continued to leak fluid, which caused the skin on his arm to become bloody and blistered.

Before filing suit, Finley gave notice of his claim to Appellees. On October 20, 1997, 2 years and 75 days after the complained of incident, Finley filed suit against CDS, Steenkamp, and Jose, alleging the parties were negligent in performing his dialysis on August 7, 1995. Finley

also argued that CDS was liable under the doctrine of respondeat superior for Jose's and Steenkamp's alleged negligence.

On October 14, 1998, Steenkamp filed a motion to dismiss based on Finley's failure to provide an expert report within 180 days of filing suit, as required by section 13.01(d) of the Act. *Id.* art. 4590i, § 13.01(d). On the same date, CDS and Jose filed a motion for summary judgment. After a hearing, the trial court granted both motions. Finley filed a motion for new trial that was overruled by operation of law, followed by his notice of appeal.[1]

## III. THE EXPERT REPORT REQUIREMENT

In his first issue, Finley alleges the trial court erred in dismissing his suit against Steenkamp because his failure to file the expert report within 180 days of filing suit was an accident or mistake, and was not intentional or the result of conscious indifference. In any health care liability claim, section 13.01(d) of article 4590i requires the complainant to file an expert report with each health care provider defendant within 180 days of filing the claim, describing how the health care provider breached the appropriate standard of care. *Id.* § 13.01(d), (r)(6). If a claimant fails to comply with this requirement, the court shall dismiss "the action of the claimant against that defendant with prejudice to the claim's refiling." *Id.* § 13.01(e)(3). However, if after a hearing the trial court finds that the claimant's failure to file the report as required by subsection (d) was "not intentional or the result of conscious indifference but was the result of an acci-

dent or mistake, the court shall grant a grace period of 30 days to permit the claimant to comply with that subsection." *Id.* § 13.01(g).

In this case, Finley's expert report was due on April 20, 1998. On October 14, 1998, almost one year after Finley filed suit, Steenkamp filed her motion to dismiss, alleging that Finley had not filed the required expert report. In support of her motion, Steenkamp attached a sworn affidavit from Marshall May, one of Steenkamp's attorneys. May stated that on June 22, 1998, he called Manuel Rios, Finley's counsel, and asked whether Finley had sent the expert report required by section 13.01. May said that Rios replied that he had not sent the report, but he would do so within a week. May stated that he never received the expert report.

Five days after Steenkamp filed her motion to dismiss, Finley filed his Designation of Expert Witnesses, which included an expert report compiled by Cherry Beckworth, Ph.D., R.N. Finley also filed a response to Steenkamp's motion and a request for an extension of time to file the expert report, alleging that his failure to comply with section 13.01(d) was not intentional or the result of conscious indifference, but was the result of an accident or mistake. Finley alleged that he failed to timely provide his expert report because (1) Appellees requested an abatement of this lawsuit for 45 days following service, (2) Finley's medical records were voluminous and were not provided to Finley until one month after the deadline to file the expert report, (3) the discovery process was delayed, (4) Finley's original expert

---

1. Steenkamp argues that we should dismiss the appeal against her because Finley's notice of appeal is defective. Steenkamp alleges that under Rule 25.1(d) of the rules of appellate procedure, an appellant's notice of appeal must state the judgment and order appealed from. Tex.R.App. P. 25.1(d). Because Finley's notice of appeal refers only to the trial court's order granting summary judgment in favor of CDS and Jose, Steenkamp argues that Finley failed to preserve error regarding the order dismissing the claims against Steenkamp.

However, Rule 25.1(d) actually states that an appellant's notice of appeal must "state the *date of* the judgment or order appealed from." *Id.* (emphasis added). Here, Finley's notice of appeal included the date of the trial court's orders granting Steenkamp's motion for dismissal and CDS and Jose's motion for summary judgment. As a result, it was not defective under Rule 25.1(d). *See* John Hill Cayce, Jr. et al., *Civil Appeals in Texas: Practicing Under the New Rules of Appellate Procedure,* 49 Baylor L. Rev. 867, 886 (1997).

witness was unable to provide an expert report, and (5) on May 31, 1998, the trial court had entered a scheduling order designating October 19, 1998 as Finley's deadline to designate his expert witnesses and provide his expert report.

On November 6, 1998, the trial court held a hearing on Steenkamp's motion to dismiss. At the hearing, May testified that during his telephone conversation with Rios, May informed Rios that the 180–day deadline for filing his expert report had already passed. May testified that Rios said he was aware that the deadline had passed and that he would try to get the report to May as soon as he could. When May reminded Rios that Steenkamp was entitled to file a motion to dismiss the claim against her, Rios said he did not believe the trial court would grant the motion.

On cross-examination, May denied that he and Rios had discussed whether the trial court's scheduling order took precedence over the statutory deadline for filing the expert report. May also said Rios did not mention that he needed to take Steenkamp's deposition before he could file an expert report.

At the conclusion of the hearing, Rios argued that the trial court's scheduling order set October 19, 1998 as the deadline for Finley to designate expert witnesses and to file his expert report. Rios stated that he and May had discussed the scheduling order and neither had a problem with the deadlines it imposed. Rios also contended that during his telephone conversation with May, he and May discussed not only May's belief that the deadline for filing the report had passed, but also Rios's belief that the trial court's scheduling order had extended the deadline for filing the report until October 19, 1998. Finally, Rios argued that Appellees' delay in answering discovery and Rios's problems with his expert witness caused him to miss the deadline. After the hearing, the trial court granted Steenkamp's motion

and dismissed Finley's claim against Steenkamp with prejudice.

On appeal, Finley contends the trial court erred in failing to grant his request for an extension of time to file the expert report as permitted by section 13.01(g) of article 4590i. *Id.* § 13.01(g). Specifically, Finley alleges that he established that his failure to timely file the expert report was a mistake or accident because he reasonably believed that the report was not due until October 19, 1998, as set forth in the trial court's scheduling order.

### A. STANDARD OF REVIEW

■ We review the trial court's dismissal of a health care liability claim for failing to comply with the expert report provision of section 13.01 under an abuse-of-discretion standard. *See Schorp v. Baptist Mem'l Health Sys.,* 5 S.W.3d 727, 731 (Tex.App.—San Antonio 1999, no pet.); *Estrello v. Elboar,* 965 S.W.2d 754, 758 (Tex.App.—Fort Worth 1998, no pet.). *But see Palacios v. American Transitional Care Centers,* 4 S.W.3d 857, 860 (Tex. App.—Houston [1st Dist.] 1999, pet. filed) (applying summary judgment standard to review trial court's dismissal of article 4590i claim). Whether a trial court abused its discretion depends on whether it acted without reference to any guiding rules or principles. *See Estrello,* 965 S.W.2d at 758. An abuse of discretion does not occur where the trial court bases its decision on conflicting evidence. *See id.* Moreover, a trial court does not abuse its discretion as long as some evidence of substantive and probative character exists to support the trial court's decision. *See id.*

### B. APPLICABLE LAW

The Act does not define what constitutes an intentional act or conscious indifference, nor does it provide definitions or guidance as to what is considered an accident or mistake. However, because the language found in section 13.01(g) of article 4590i is identical to the language applicable in determining whether to grant a motion for

new trial after a default judgment, recent cases have construed these terms to apply in a manner similar to their application in a default judgment context. *See, e.g., Schorp,* 5 S.W.3d at 732; *Nguyen v. Kim,* 3 S.W.3d 146, 150–51 (Tex.App.—Houston [14th Dist.] 1999, no pet.); *McClure v. Landis,* 959 S.W.2d 679, 681 (Tex.App.—Austin 1997, pet. denied).

An extension of time must be granted if the motion and affidavits filed by the movant set forth facts which, if true, would negate intentional or consciously indifferent conduct. *See Director, State Employees Workers' Compensation Div. v. Evans,* 889 S.W.2d 266, 268 (Tex. 1994). Some excuse, but not necessarily a good excuse, is enough to warrant an extension to file an expert report, as long as the act or omission causing the failure to file the report was in fact accidental. *See Horsley–Layman v. Angeles,* 968 S.W.2d 533, 536 (Tex.App.—Texarkana 1998, no pet.). The burden is on the party seeking relief to show some evidence of accident or mistake to demonstrate that he did not act intentionally or with conscious indifference. *See Schorp,* 5 S.W.3d at 732. It is then the defendant's burden to controvert the plaintiff's evidence of mistake, or else an issue of mistake exists and an extension of time must be granted. *See id.*

In determining whether the claimant's failure was intentional or the result of conscious indifference, we look to the knowledge and acts of the party seeking relief. *See Nguyen,* 3 S.W.3d at 151. An accident or mistake in this context is generally characterized by the claimant's inadequate knowledge of the facts or by an unexpected happening that precludes compliance. *See id.* at 152. Conscious indifference, on the other hand, means failing to take some action that would seem indicated to a person of reasonable sensibilities under similar circumstances. *See id.*

### C. Analysis

In this case, Finley argues that his failure to timely provide the expert report was the result of numerous circumstances that led to his mistaken belief that the date specified in the trial court's scheduling order took precedence over the 180–day deadline set out in section 13.01° of article 4590i. The crux of Finley's argument is that he thought the 180–day deadline was replaced by the trial court's scheduling order.

Finley's argument fails for numerous reasons. First, as Steenkamp correctly points out, the trial court did not issue its scheduling order until May 31, 1998, more than a month after the deadline had passed for Finley to turn over his expert report. Finley attempts to salvage this argument on appeal by contending that during the original 180–day period following the filing of this suit, Appellees abated the case for 45 days. Finley alleges that this abatement extended the expert report filing deadline by 45 days, into June 1998. Finley then alleges that on May 31, 1998, after the case resumed, the trial court entered its scheduling order designating October 19, 1998 as its deadline for Finley to designate his expert witnesses and provide his expert report. However, Finley did not raise this abatement argument until he filed his motion for new trial. In his motion for an extension of time, Finley merely alleged that Steenkamp had *requested* an abatement, presumably to support his argument that Steenkamp had tried to delay the case. He never argued, however, that the case was abated or that the abatement extended the period for filing his expert report.

Second, the trial court's scheduling order does not "designate[ ] October 19, 1998 as Appellant's deadline to … provide expert reports," as Finley contends. Instead, the order specifies that Finley was required to provide the name of each of his expert witnesses expected to testify at trial, along with the expert's address and the topic of the witness's testimony, no later than October 19, 1998. Nothing in the court's scheduling order implied that it

was altering the date on which the expert report required by article 4590i was due.[2]

Additionally, Finley attempts to attach some significance to the fact that Steenkamp did not object to the trial court's scheduling order. Specifically, he argues that by not objecting to the order, Steenkamp agreed to October 19, 1998 as the date for Finley to file his expert report. For the reasons discussed in the previous paragraph, this argument is without merit.

Finley next contends that he was unable to timely file his expert report because Ann Layton, R.N., Finley's original expert witness, unexpectedly withdrew from the case and was unable to provide the required report. However, the record reflects that Finley did not ask Layton to prepare the expert report until May or June 1998, which is well after the 180–day deadline passed for filing the report. Thus, Layton's unexpected withdrawal from the case *after* the report was due could not have contributed to Finley's failure to timely comply with section 13.01.

■ Regarding Finley's argument that the slow discovery process and voluminous medical records are sufficient to excuse his failure, we do not believe these excuses are adequate to show accident or mistake. *See, e.g., Broom v. MacMaster,* 992 S.W.2d 659, 664 (Tex.App.—Dallas 1999, no pet.) (holding no accident or mistake had been shown where appellant's attorney knew of expert report deadline but failed to meet it because the case had only recently been referred to him, he had a large workload,

and he assumed opposing counsel would not seek strict compliance with section 13.01(d)); *Estrello,* 965 S.W.2d at 758 (holding appellant failed to show accident or mistake where her only excuses for not meeting section 13.01(d) deadline were that appellant had missed several meetings with her attorney and appellee-physician had failed to return appellant's attorney's phone calls).

Finally, we disagree with Finley's contention that Steenkamp failed to specifically controvert the evidence presented by Finley regarding his mistaken belief. The uncontradicted evidence at the hearing demonstrated that in June 1998, Rios admitted that he knew the deadline for filing Finley's expert report had passed, but Rios did not believe the trial court would dismiss the case.[3] The trial court was entitled to infer from this testimony that Finley's attorney knew about the deadline but deliberately ignored it because he did not believe the trial court would dismiss the case. Absent a showing of accident or mistake that would justify Finley's failure to provide the expert report within the time required by section 13.01(d), we cannot conclude the trial court abused its discretion in dismissing Finley's claim against Steenkamp. Point one is overruled.

## IV. TOLLING OF LIMITATIONS PERIOD

■ In his second issue, Finley argues that the trial court erred in granting sum-

---

2. The trial court's scheduling order provided in pertinent part:
 1. EXPERT WITNESS DESIGNATION. Each testifying expert's name, address and the topic of the witness'[s] testimony must be provided to opposing party no later than:
 *10/19/98:* Plaintiff(s)
 *11/16/98:* All other parties
 Experts not provided in compliance with this paragraph will not be permitted to testify absent a showing of good cause.

3. In his brief, Finley repeatedly references the affidavits of his attorney as evidence of his mistaken belief. These affidavits were attached to Finley's motion for new trial and

Finley's response to Steenkamp's response to his motion for new trial. Finley's appeal, however, concerns only the trial court's order of dismissal, not the trial court's failure to grant his motion for new trial. As an appellate court, we review the actions of a trial court based only on the evidence before the court at the time it acted. *See Methodist Hosps. v. Tall,* 972 S.W.2d 894, 898 (Tex. App.—Corpus Christi 1998, no pet.). Because Rios's affidavits were not before the trial court at the time it ruled on Steenkamp's motion to dismiss, we cannot consider them in reviewing the trial court's decision.

mary judgment in favor of CDS.[4] To support its motion, CDS argued that it was entitled to summary judgment based on the affirmative defense of limitations. Specifically, CDS argued that because a dialysis center was not a "health care provider" as defined by article 4590i, the 2–year statute of limitations for a personal injury suit applied. Alternatively, CDS argued that if the trial court determined CDS was a health care provider, Finley's claim should be dismissed for failure to timely file his expert report. In response, Finley alleged that CDS was not entitled to summary judgment because (1) CDS failed to plead the affirmative defense of limitations, (2) even if CDS was not a health care provider, it was liable to Finley under the doctrine of respondeat superior for Steenkamp's actions,[5] and (3) Finley's suit was timely filed because the applicable statute of limitations was tolled for 75 days when Finley gave presuit notice of his health care liability claim, as provided by section 4.01(c) of article 4590i.

■ We turn first to Finley's contention that CDS failed to plead this affirmative defense as required by Rule 94 of the rules of civil procedure. TEX.R. CIV. P. 94. An unpleaded affirmative defense may serve as the basis for a summary judgment when it is raised in the summary judgment motion and the non-movant does not object to the lack of a Rule 94 pleading in either its written response or before the rendition of judgment. *See Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 494 (Tex. 1991); *John Bezdek Ins. Assocs., Inc. v. American Indem. Co.,* 834 S.W.2d 401, 403 (Tex.App.—San Antonio 1992, no pet.); *see also* TEX.R. CIV. P. 166a(c) (providing that issues not expressly presented to the trial court may not serve as grounds for reversal of a summary judgment on appeal).

Here, the record reflects that Finley failed to bring CDS's pleading deficiency to the trial court's attention. As a result, he waived the right to complain about this issue on appeal. Because Finley failed to preserve error on this issue, we must now determine whether Finley's suit against CDS was barred by limitations.

### A. STANDARD OF REVIEW

■ The appropriate standard to be followed when reviewing a summary judgment is well-established. The movant has the burden to show that no genuine issues of material fact exists and that it is entitled to judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c); *Calvillo v. Gonzalez,* 922 S.W.2d 928, 929 (Tex.1996); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). The movant asserting limitations as the basis for summary judgment assumes the burden to show as a matter of law that the suit is time barred. *See Jennings v. Burgess,* 917 S.W.2d 790, 793 (Tex.1996); *Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex.1983). If the nonmovant asserts that a tolling provision applies, the movant must conclusively negate the tolling provision's application to show his entitlement to summary judgment. *See Jennings,* 917 S.W.2d at 793; *Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 518 n. 2 (Tex.1988).

### B. APPLICABLE LAW

■ Section 10.01 of article 4590i provides for a strict 2–year statute of limitations for all health care liability claims. TEX.REV.CIV. STAT. ANN. art. 4590i, § 10.01. As CDS correctly asserts, however, the limitations period in section 10.01 only applies to health care liability claims, i.e., claims against either a physician or a health care provider. *Id.* §§ 1.03(4), 10.01.

4. Finley does not challenge the summary judgment in favor of Jose.

5. Finley appears to argue that his failure to sue CDS within the limitations period is irrelevant because an employer who is liable under the doctrine of respondeat superior need not be sued to be held liable for its employee's wrongful acts. Although Finley cites two cases that discuss the doctrine of respondeat superior in general terms, he does not provide any authority for this novel proposition, and we respectfully decline to adopt it.

Because it is undisputed that CDS is neither a physician nor a health care provider under the Act,[6] the lawsuit against it is not a "health care liability claim" and is thus governed by the general 2-year statutory limitations period for a personal injury cause of action. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.003(a) (Vernon 1986).

 A cause of action for personal injury under section 16.003 of the civil practice and remedies code must be brought within 2 years from the date the cause of action accrues. *Id.; Childs v. Haussecker,* 974 S.W.2d 31, 36 (Tex.1998). A cause of action accrues when a wrongful act causes an injury. *See Childs,* 974 S.W.2d at 36; *S.V. v. R.V.,* 933 S.W.2d 1, 4 (Tex.1996). In this case, the undisputed date of Finley's injury was August 7, 1995. The statute of limitations began running on that date; thus, Finley had until August 8, 1997 to timely file his personal injury suit against CDS. He failed to do so until October 20, 1997—73 days after the 2-year limitations period expired. As a result, unless the running of the limitations period was tolled, the trial court did not err in granting CDS's motion for summary judgment.

In response, Finley asserts that the section 16.003 statutory period was tolled by the following provision in article 4590i:

(a) Any person or his authorized agent asserting a health care liability claim shall give written notice of such claim by certified mail, return receipt requested, to each physician or health care provider against whom such claim is being made at least 60 days before the filing of a suit in any court of this state based upon a health care liability claim.

. . . .

(c) Notice given as provided in this Act shall toll the applicable statute of limitations to and including a period of 75 days following the giving of the notice, and *this tolling shall apply to all parties and potential parties.*

TEX.REV.CIV. STAT. ANN. art. 4590i, § 4.01(a), (c) (emphasis added). Finley asserts that under the plain language of section 4.01(c) of the Act, his presuit notice to Steenkamp, who is a registered nurse and thus a "health care provider," tolled the applicable statute of limitations for 75 days for "all parties and potential parties," including CDS. CDS, on the other hand, contends that "all parties and potential parties" refers to only those parties involved in the health care liability claim, i.e., physicians and health care providers.

### C. STATUTORY INTERPRETATION

 Our primary objective in construing a statute is to determine and give effect to the Legislature's intent. *See Mitchell Energy Corp. v. Ashworth,* 943 S.W.2d 436, 438 (Tex.1997). If possible, we are to discern legislative intent from the plain meaning of the words of the statute. *See Albertson's, Inc. v. Sinclair,* 984 S.W.2d 958, 960 (Tex.1999); *Monsanto Co. v. Cornerstones Mun. Util. Dist.,* 865 S.W.2d 937, 939 (Tex.1993). We do not, however, interpret statutory language so rigidly "that the almost certain intent of the Legislature is disregarded." *City of LaPorte v. Barfield,* 898 S.W.2d 288, 292 (Tex.1995). Instead, the court must consider the consequences that would follow from its construction of a statute and avoid absurd results. *See* TEX. GOV'T CODE ANN. § 311.023 (Vernon 1998); *Sharp v. House of Lloyd, Inc.,* 815 S.W.2d 245, 249 (Tex.

---

**6.** A health care provider is "any person, partnership, professional association, corporation, facility, or institution duly licensed or chartered by the State of Texas to provide health care as a registered nurse, hospital, dentist, podiatrist, pharmacist, or nursing home, or an officer, employee, or agent thereof acting in the course and scope of his employment." *Id.* § 1.03(3). This definition includes only those persons or entities specifically listed and does not impliedly include other entities. *See, e.g., Townsend v. Catalina Ambulance Co.,* 857 S.W.2d 791, 796 (Tex.App.—Corpus Christi 1993, no writ). CDS is a dialysis center that operates during limited hours and, thus, is neither a general hospital nor a special hospital. *See* TEX. HEALTH & SAFETY CODE ANN. § 241.003(5), (15) (Vernon Supp.2000).

1991). Moreover, legislative intent must be determined from the entire act, not from isolated portions thereof. *See Jones v. Fowler*, 969 S.W.2d 429, 432 (Tex.1998).

## D. ANALYSIS

As noted above, in construing section 4.01(c), Finley would have us to hold that the Legislature intended the "all parties and potential parties" language to toll the statute of limitations applicable to his negligence claim against CDS. After considering the consequences of this interpretation, we respectfully decline to do so. First, this interpretation would lead to absurd results. Under this construction, section 4.01 would toll for 75 days the statute of limitations applicable to *any* lawsuit filed against *any* defendant—e.g., an action for negligence, battery, or intentional infliction of emotional distress—provided that suit also involved (either legitimately or otherwise) presuit notice of a claim to a health care provider under article 4590i. Furthermore, this interpretation would allow plaintiffs to bring sham lawsuits against health care providers in order to obtain additional time to file their legitimate claims against parties not covered under the Act.

Second, in determining legislative intent, we are to consider the nature and object sought to be obtained by the Legislature. *See Ashworth*, 943 S.W.2d at 438. Article 4590i was enacted to curb escalating medical care costs resulting from the increasing number of health care liability claims being filed. TEX.REV.CIV. STAT. ANN. art. 4590i, § 1.02. The Legislature passed section 4.01 to give health care providers and physicians 60 days before a health care claim was filed to try to settle the case without the expense of litigation. *See*

*De Checa v. Diagnostic Ctr. Hosp., Inc.*, 852 S.W.2d 935, 938 (Tex.1993); *Schepps v. Presbyterian Hosp.*, 652 S.W.2d 934, 937 (Tex.1983). At the same time, the Legislature sought to protect the health care claimant's right to maintain his lawsuit by tolling the applicable statute of limitations for 75 days. *See De Checa*, 852 S.W.2d at 938; *Schepps*, 652 S.W.2d at 937. We do not see how adopting Finley's argument to apply this tolling provision to *all* claims brought in conjunction with a health care liability suit, even if the claim is not brought against a health care provider, furthers the Legislature's purpose in enacting this statute.

Finally, we note that section 1.02 of the Act expressly provides that in passing article 4590i, the Legislature intended to "make certain modifications to the liability laws as they relate *to health care liability claims only* and with an intention of the legislature *to not extend or apply such modifications of liability laws to any other area of the Texas legal system or tort law.*" TEX.REV.CIV. STAT. ANN. art. 4590i, § 1.02((b)(1), (7) (emphases added)). With this in mind, we cannot conclude that the Legislature ever intended for the tolling provision in section 4.01(c) to reach beyond the boundaries of section 4590i to extend the statute of limitations for a general negligence claim (or any other claim, for that matter) against a non-health care provider. Accordingly, we hold that "all parties and potential parties" in section 4.01(c) refers to only the parties to a health care liability claim as defined in section 1.03(4).[7] *Id.* § 1.03(4).

Because the running of the limitations period applicable to Finley's negligence claim against CDS was not tolled, the trial court did not err in granting CDS's motion

---

**7.** Finley also contends that if this court limits the "all parties" language in section 4.01(c) to only those parties involved in a health care liability claim, this will lead to a "multiplicity of lawsuits." Finley contends that "[p]laintiffs will file one lawsuit before the two-year period against those negligent parties involved in an occurrence who are not 'health care providers' and a second lawsuit, during the tolling period, against those parties involved in an occurrence who qualify as 'health care providers' under Article 4590i." Assuming Finley is correct, this is not an uncommon occurrence and is certainly no reason to disregard the fundamental principle that all defendants must be timely sued.

for summary judgment. Finley's second issue is overruled.

## V. CONCLUSION

Because there was conflicting evidence from which the trial court could have concluded that Finley's failure to file his expert report was not the result of an accident or mistake, we hold the trial court did not abuse its discretion in dismissing the case against Steenkamp. Additionally, because the Legislature did not intend presuit notice of a health care liability claim to a health care provider to extend the limitations period for causes of action raised outside the Act, the trial court did not err in granting CDS's motion for summary judgment.

We affirm the trial court's order of dismissal in favor of Steenkamp. We also affirm the trial court's order granting summary judgment in favor of CDS.