# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00575-CV

**Sarah Logsdon/Thomas H. Miller, M.D., Appellants**

**v.**

**Thomas H. Miller, M.D. and Columbia/St. David's Healthcare System d/b/a St. David's Medical Center/Sarah Logsdon, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
## NO. 99-14401, HONORABLE CHARLES F. CAMPBELL, JUDGE PRESIDING

Sarah Logsdon appeals the district court's rendition of a take-nothing judgment on her medical malpractice claims. In two issues, Logsdon contends that the district court erred in granting summary judgment in favor of Dr. Thomas H. Miller and St. David's Medical Center. Miller and St. David's filed cross-appeals challenging the district court's ruling granting Logsdon's motion for extension of time for filing her expert medical report pursuant to the Texas Medical Liability and Insurance Improvement Act. *See* Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(d), (f)-(g) (West Supp. 2002). We hold the district court (i) improperly granted summary judgment in favor of Miller, (ii) properly granted summary judgment in favor of St. David's, and (iii) did not abuse its discretion in allowing Logsdon to file her expert medical report. Accordingly, we affirm in part, reverse in part, and remand the cause to the district court for further proceedings.

## BACKGROUND

Logsdon filed suit against Miller and St. David's on December 10, 1999, alleging medical malpractice arising from the development of reflex sympathetic dystrophy in her left arm and hand following reconstructive jaw surgery. On the day of the surgery, Miller, the anesthesiologist, and a circulating nurse employed by St. David's prepared Logsdon to undergo anesthesia during her jaw surgery. The preparation included positioning, supporting, and padding Logsdon to avoid potential complications from lying still on the operating table for a long period of time. Miller and the nurse placed Logsdon on her back with her arms at her side, elbows straight, and the palms of her hands facing her hips. After the surgery, Logsdon woke up feeling numbness and pain in her left arm and hand. After Logsdon advised him of her symptoms, Miller noted in Logsdon's chart his diagnosis that "[h]er pain, I think, is from antecubital tendon stretch secondary to prolonged wrist extension."

The controversy underlying this suit involves whether Logsdon's wrists were placed in a "joint-neutral" or "extended position." Logsdon's petition alleged that Miller was negligent in failing to properly pad, tuck, position, and monitor her during the seven-hour surgical procedure; she alleged that St. David's, "acting by and through its [operating room nurse]," was negligent in that it failed to ensure its "operating room nursing staff was adequately trained in positioning, padding and tucking, and monitoring . . . a patient undergoing a seven-hour reconstructive jaw surgery." The essence of her claim, however, is that Miller and the nurse improperly positioned her wrist, thereby resulting in her development of reflex sympathetic dystrophy.

After adequate discovery time, Miller and St. David's filed separate motions for summary judgment. Asserting both traditional and no-evidence grounds, Miller and St. David's

2

contended that each was entitled to judgment as a matter of law under Texas Rule of Civil Procedure 166a(c) and, alternatively, under Texas Rule of Civil Procedure 166a(i), that Logsdon could produce no evidence of a breach in the appropriate standard of care or proximate cause. *See* Tex. R. Civ. P. 166a(c), (i). The district court granted, in a general order, summary judgment in favor of Miller and St. David's. From that judgment, Logsdon now appeals.

## DISCUSSION

### *Summary Judgment*

By two issues, Logsdon challenges the propriety of the district court's order granting summary judgment in favor of both Miller and St. David's. At the summary judgment hearing, St. David's asserted that its "motion for summary judgment is primarily based on the fact that there is no evidence of any negligence." Miller contended that his two grounds for summary judgment related to "inadequate evidence of a breach of standard of care and . . . causation." Because the trial court's order does not specify the ground or grounds relied on for its ruling, we will affirm the summary judgment if any of the theories Miller or St. David's advanced are meritorious. *See Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989). Both traditional and no-evidence summary judgment motions are urged here; therefore, this Court may uphold the summary judgment if Miller and St. David's prevail under either Rule 166a(c) or Rule 166a(i). Because Miller and St. David's both focus primarily on their no-evidence grounds, we briefly address their traditional summary judgment motions.

### *Traditional Summary Judgment*

The standard for reviewing a motion for summary judgment is well established: (1) The movant for summary judgment has the burden of showing that no genuine issue of material fact

3

exists and that the movant is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and (3) every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). When a defendant seeks to obtain summary judgment based on a plaintiff's inability to prove its case, the defendant must conclusively disprove at least one element of each of the plaintiff's causes of action. *See Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991). To prevail on a medical malpractice claim in Texas, a plaintiff must establish that a breach in the appropriate standard of care proximately caused the injury. *See Duff v. Yelin*, 751 S.W.2d 175, 176 (Tex. 1988). In this case, Miller and St. David's based their motions for summary judgment on the absence of evidence showing a breach in the standard of care or causation. Neither party adduced evidence negating a specific element of Logsdon's claims or establishing conclusively an affirmative defense; rather, each relied on Logsdon's failure to produce evidence raising fact issues relating to the appropriate standard of care and causation. Thus, we hold that, as a matter of law, neither Miller nor St. David's proved entitlement to judgment as a matter of law under the standards for a traditional motion for summary judgment.

*No-Evidence Summary Judgment*

Unlike a traditional summary judgment movant, a no-evidence summary judgment movant does not bear the burden of establishing a right to judgment by proving each claim or defense. *See Holmstrom v. Lee*, 26 S.W.3d 526, 530 (Tex. App.—Austin 2000, no pet.). Instead, a party seeking a no-evidence summary judgment must assert that no evidence exists as to one or more of the essential elements of the non-movant's claims on which it would have the burden of proof at trial.

4

*McCombs v. Children's Med. Ctr.*, 1 S.W.3d 256, 258 (Tex. App.—Texarkana 1999, pet. denied). If the non-movant fails to produce more than a scintilla of probative evidence raising a genuine issue of fact as to an essential element of a claim on which the non-movant has the burden of proof at trial, summary judgment is appropriate. *See* Tex. R. Civ. P. 166a(i); *Holmstrom*, 26 S.W.3d at 530. In contrast to the *de novo* standard applied to traditional summary judgment motions, a no-evidence summary judgment is essentially a directed verdict granted pretrial, to which we apply a legal sufficiency standard of review. *See Jackson v. Fiesta Mart*, 979 S.W.2d 68, 70 (Tex. App.—Austin 1998, no pet.).

By filing no-evidence motions for summary judgment, Miller and St. David's placed the burden on Logsdon to come forward with *some* evidence showing that a breach in the appropriate standard of care caused her injury. We first address Miller's motion. In his motion for summary judgment, Miller alleged that Logsdon "failed to produce any legally admissible evidence which would demonstrate that [Miller] breached the applicable standard of care" or "that the actions or omissions of [Miller] proximately caused injury to" Logsdon. Attached to her response, Logsdon included the affidavit of her medical expert, Dr. Theodore H. Stanley, along with the deposition transcripts of Miller, Stanley, and Dr. David W. Morledge, her treating neurologist.

Although Logsdon submitted these three deposition transcripts and Stanley's affidavit, the parties' main dispute centers on whether Stanley's testimony and affidavit are sufficient to avoid summary judgment. Logsdon contends that Stanley's deposition and affidavit raise fact issues. Miller responds that Stanley's conclusory statements are insufficient, as a matter of law, to raise a fact

5

issue.[1] *See Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) (per curiam) (stating that "conclusory affidavits are not enough to raise fact issues"). We find Miller's argument unpersuasive. Stanley's statements stem from the culmination of his expert medical opinion after reviewing Miller's deposition and Logsdon's medical records. Stanley asserts his familiarity with the appropriate standard of care and that the positioning of "Logsdon's left arm with the elbow straight and the left wrist extended for a prolonged period of time" constituted negligence on Miller's part. Accordingly, Stanley's affidavit contains sufficient non-conclusory statements to constitute proper summary judgment proof. The question remains, however, whether Logsdon's summary judgment proof raises more than a scintilla of evidence creating a fact question.

Miller contends that Stanley's only criticism of Miller's conduct is based on Stanley's assumption that Miller mispositioned Logsdon's wrist during surgery. Miller asserts that Stanley's assumption is flawed because Stanley "did not and cannot dispute the testimony of Dr. Miller in relation to Dr. Miller's interpretation of the terms 'neutral position' and 'wrist extension' used in [Logsdon]'s medical records." Miller further argues that, because Stanley did not controvert Miller's evidence that positional injuries occur despite proper positioning, he is entitled to judgment as a

[1] Miller also challenges Stanley's affidavit as a "sham" and contradictory to his deposition testimony. Although Miller objected to the affidavit at the summary judgment hearing, he never obtained a ruling on his objections. Nonetheless, these contentions are without merit. Miller misunderstands the case law pertaining to sham affidavits. *See Cantu v. Peacher*, 53 S.W.3d 5, 7 (Tex. App.—San Antonio 2001, pet. denied) (explaining if a witness's own affidavit contradicts the earlier deposition testimony it must explain the reason for the change, otherwise the court will consider the affidavit an attempt to create a "sham" fact issue). Stanley's affidavit does not clearly contradict his earlier deposition testimony; it merely states in less equivocal terms his expert opinion. That Stanley's expert opinion in his affidavit differs slightly from his responses at deposition does not alone make the affidavit a sham.

matter of law. We disagree. To avoid summary judgment on Miller's no-evidence motion, Logsdon need only produce more than a scintilla of evidence supporting the challenged element in the motion. This means, then, the evidence must raise a fact question, not that her injury *could not* have occurred absent negligence, as Miller contends, but that it *did* occur because of Miller's negligence.

Stanley states unequivocally in his deposition that Miller breached the appropriate standard of care for an anesthesiologist and that such breach proximately caused Logsdon's injury. Miller wrote in Logsdon's medical chart that her injury was likely the result of "antecubital tendon stretch secondary to prolonged wrist extension." In his deposition, Miller attempts to explain his definition of wrist extension and how it differs from Stanley's. That Stanley and Miller disagree as to what constitutes negligent wrist extension is precisely the type of dispute best suited for a jury's determination. Despite Miller's contentions that Stanley's deposition and affidavit are inconsistent, it is clear that Stanley never changed his opinion that Logsdon's injury resulted from Miller's negligent positioning of her wrist. Therefore, we hold that Logsdon produced more than a scintilla of evidence raising a fact issue as to the standard of care and causation elements relating to Miller, thereby precluding summary judgment in his favor. Accordingly, we sustain Logsdon's first issue.

With respect to St. David's, however, we find that Logsdon failed to raise more than a scintilla of evidence establishing a fact issue regarding the appropriate standard of care for an operating room nurse. In its motion, St. David's asserted that, because "[i]t is undisputed that the injury made the subject of this lawsuit could have occurred absent any negligence whatsoever—even if the patient was positioned correctly in every way and consistent with the standard of care" and

7

"[t]here is no evidence in this case that the injury suffered by [Logsdon] would not have occurred but for an act of negligence . . . St. David's is entitled to summary judgment."

In response, Logsdon submitted Stanley's deposition and affidavit.[2] In his deposition, Stanley stated that he would not expect an operating room nurse to intervene in a doctor's positioning of a patient "[o]ther than if she sees something that is really upsetting to her." He also explained that a ten-degree extension of the wrist—the degree of extension claimed to have caused Logsdon's injury—was subtle, "maybe not even detectable by a nurse's eye, assuming she has all the usual activities she's doing." In his affidavit, however, Stanley states "that the conduct of the operating room nurse, [], in positioning Sara Logsdon during the surgery in question . . . amounted to negligence, and was a proximate cause" of her injury. These statements are the only summary judgment proof relating to the nurse's standard of care. And unlike his statements concerning Miller, Stanley never sets forth, either in his affidavit or deposition, the appropriate nursing standard of care, how he is familiar with it, or how it differs from that of an anesthesiologist. Stanley's conclusory statements in his affidavit regarding the nurse are therefore not evidence and are insufficient, as a matter of law, to raise a fact issue. *See Ryland Group, Inc.*, 924 S.W.2d at 122. Because the only proof concerning the nurse is conclusory, Logsdon failed to produce even a scintilla of evidence that St. David's in any way breached the appropriate standard of care or caused her injury. Accordingly, we overrule Logsdon's second issue.

*4590i Expert Report*

---

[2] St. David's challenged Stanley's affidavit on the same grounds as Miller. *See supra* note 1.

8

Logsdon entered into a written agreement with Miller and St. David's on June 7, 2000 to extend the 180-day deadline for filing her expert medical report until July 7, 2000.[3] *See* Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(d) (requiring expert medical report to be filed within 180 days of filing medical malpractice suit); *id.* § 13.01(h) (permitting parties to enter into written agreement to extend 180-day deadline by thirty days). Unable to file the report by the agreed date, Logsdon filed a motion for a further extension with the district court on July 7, 2000. *See id.* § 13.01(f) (permitting the court, for good cause, to extend the 180-day filing requirement by thirty days). On July 13, 2000, Miller and St. David's filed responses to Logsdon's motion and also filed separate motions to dismiss her cause pursuant to section 13.01(e). *See id.* § 13.01(e) (mandating dismissal with prejudice for failure to comply with 180-day filing requirement). Prior to the July 21, 2000 hearing on the motions, Logsdon filed a supplemental motion for extension under section 13.01(g). *See id.* § 13.01(g).

At the hearing, Miller and St. David's argued that Logsdon's June 7, 2000 agreement precluded her from seeking another time extension.[4] Logsdon's counsel asserted that she qualified for an extension under section 13.01(g) because (i) the expert and substitute counsel that she lined

---

[3] Logsdon's 180-day deadline expired June 7, 2000.

[4] The June 7, 2000 agreement, drafted by Logsdon's counsel, states in pertinent part: "We further agree that this extension constitutes Plaintiff's only statutory thirty-day extension." At the hearing and on appeal, Miller and St. David's contend that this agreement constitutes a Rule 11 agreement that must be enforced to deny Logsdon any further extensions. This contention is without merit. Pursuant to section 13.01(g), a district court does not have discretion to refuse an extension when the plaintiff establishes that its failure to timely file its expert report was not intentional or the result of conscious indifference but was the result of accident or mistake. Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(g). Therefore, their agreement—whatever the parties may call it—cannot override the district court's obligation to follow the legislative mandate of section 13.01(g).

up fell through two weeks prior to the filing deadline,[5] and (ii) the substitute counsel gave the expert witness the incorrect date for submitting the report. The district court denied the motions to dismiss and granted Logsdon's motion for extension of time to file her expert report.

Miller and St. David's both filed cross-appeals contending that the district court erroneously granted Logsdon's motion for extension to file her expert report. They contend that, because Logsdon did not establish her failure to file the report was not intentional or due to conscious indifference, an extension under section 13.01(g) was impermissible.[6] We review a district court's decision to grant an extension under section 13.01(g) for an abuse of discretion. *See American Transitional Care Ctrs. of Tex. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001) (reviewing claim under section 13.01(e) for abuse of discretion); *Nguyen v. Kim*, 3 S.W.3d 146, 151 (Tex. App.—Houston [14th Dist.] 1999, no pet.). A trial court abuses its discretion where it acts without reference to any guiding rules or principles, *i.e.*, if it acts arbitrarily and unreasonably. *See K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000). We defer to the court's factual determination but review questions of law *de novo*. *See Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992).

An extension under section 13.01(g) is not discretionary. *See* Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(g). The statute states: "the court *shall* grant a grace period" if it finds the

---

[5] Logsdon's original counsel sought to obtain substitute counsel because she stopped taking medical malpractice cases and was attempting to refer out her remaining cases.

[6] Miller and St. David's also argue that a good-cause extension under section 13.01(f) is unavailable to Logsdon because that section only permits a single thirty-day extension of the 180-day filing requirement, thereby precluding an extension beyond 210 days from Logsdon's original petition. Because we agree that section 13.01(f) precludes an extension beyond 210 days from the date Logsdon filed her original petition, *see Pfeiffer v. Jacobs*, 29 S.W.3d 193, 197 (Tex. App.—Houston [14th Dist.] 2000, pet. denied), we discuss only their claim pertaining to section 13.01(g).

plaintiff's failure to file an expert report "was not intentional or the result of conscious indifference but was the result of an accident or mistake." *Id.* (emphasis added). Once the plaintiff establishes the existence of accident or mistake, the trial court is required to grant the requested thirty-day extension. *Id.* The question for our determination, then, is whether the district court abused its discretion in finding that Logsdon established the existence of accident or mistake.

Comparing section 13.01(g) with Texas Rule of Civil Procedure 165a(3), relating to reinstatement of cases dismissed for want of prosecution, and the rules governing equitable motions for new trial, we find the language to be virtually identical. *Compare* Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(g), *with* Tex. R. Civ. P. 165a(3), *and Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124 (Tex. 1939). Because the Legislature intended the language of section 13.01(g) to apply analogously, cases discussing rule 165a(3) and equitable motions for new trial are instructive in ascertaining whether Logsdon is entitled to a grace period under section 13.01(g). *McClure v. Landis*, 959 S.W.2d 679, 681 (Tex. App.—Austin 1997, pet. denied).

Proof of accident or mistake precludes a finding that one acted intentionally or with conscious indifference. *Smith v. Babcock & Wilcox Constr. Co.*, 913 S.W.2d 467, 468 (Tex. 1995) ("Proof of . . . accident, mistake or other reasonable explanation [] negates the intent or conscious indifference for which [an extension] can be denied."). To establish entitlement to a grace period, the movant must provide some excuse justifying the delay so that the district court can determine whether the excuse qualifies as an accident or mistake. *See Finley v. Steenkamp*, 19 S.W.3d 533, 539 (Tex. App.—Fort Worth 2000, no pet.); *Nguyen*, 3 S.W.3d at 152. In this context, an accident or mistake is generally characterized by either inadequate knowledge of the facts or an unexpected happening. *Tesch v. Stroud*, 28 S.W.3d 782, 787 (Tex. App.—Corpus Christi 2000, pet. denied); *Finley*, 19

11

S.W.3d at 539. In making this determination, courts look to the knowledge and acts of the movant. *Pfeiffer v. Jacobs*, 29 S.W.3d 193, 198 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). The party seeking the extension has the burden to demonstrate accident or mistake. *Roberts v. Medical City Dallas Hosp., Inc.*, 988 S.W.2d 398, 403 (Tex. App.—Texarkana 1999, pet. denied). The burden then shifts to the opposing party to negate the movant's proof and, unless the opposing party prevails, the court must grant the requested extension. *Landry v. Ringer*, 44 S.W.3d 271, 275 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

At the hearing, Logsdon's counsel represented that two weeks prior to the July 7, 2000 deadline, her expert and substitute counsel "fell through." She also stated that the substitute counsel incorrectly advised the new expert of the filing deadline. Miller and St. David's argued to the district court that Logsdon could not claim accident or mistake because she knew for more than four months about the impending deadline. However, their argument does not controvert Logsdon's representation that her expert and substitute counsel unexpectedly became unavailable. On appeal, Miller and St. David's rely on *Landry* and *Pfeiffer* for the proposition that Logsdon's inability to procure an expert report and substitute counsel does not entitle her to a grace period. *See generally Pfeiffer*, 29 S.W.3d 193; *Landry*, 44 S.W.3d 271. Their reliance is misplaced. In *Landry*, the plaintiff, despite his best attempts, could not locate an expert to testify on his behalf. 44 S.W.3d at 276. Pfeiffer's expert, on the other hand, was unwilling, after examining Pfeiffer on three prior occasions, to provide a report without conducting further examinations. *Pfeiffer*, 29 S.W.3d at 198. Neither of those cases involved an unexpected event, *i.e.*, losing an expert and substitute counsel two weeks prior to the filing deadline, and are therefore not analogous to the situation here. Further, because Miller and St. David's failed to controvert Logsdon's testimony concerning an unexpected

12

happening, the statute required the district court to grant her an extension once the court found accident or mistake. Because the court conducted a hearing and impliedly found cause, we cannot conclude that the district court abused its discretion. Therefore, we overrule their sole issue on cross-appeal and hold that the trial court did not abuse its discretion in granting Logsdon an extension under section 13.01(g).

## CONCLUSION

We hold that the district court erred in granting summary judgment in favor of Miller, but correctly granted summary judgment in favor of St. David's. Therefore, we sustain Logsdon's first issue and overrule her second issue. Further, because Logsdon properly received an extension under section 13.01(g), we overrule Miller's and St. David's' cross-appeal issues. Accordingly, we affirm in part and reverse in part the district court's order and remand the cause for further proceedings.

 

Jan P. Patterson, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed in Part; Reversed and Remanded in Part

Filed: March 21, 2002

Do Not Publish