**Thomas DILLARD, Individually and as Administrator of the Estate of Fred Dillard, Deceased, Appellant,**

v.

**PARKLAND HOSPITAL, Appellee.**

No. 05–01–00287–CV.

Court of Appeals of Texas, Dallas.

April 22, 2002.

Letta Dillard Gorman, Montgomery, AL, Steve Gibbins, Austin, for appellant.

Winston L. Borum, Tricia Martin, Borum & Hancock, L.L.P., Fort Worth, for appellee.

Before Justices LAGARDE, MOSELEY, and BRIDGES.

## OPINION

Opinion By Justice LAGARDE.

Thomas Dillard (Dillard), individually and as administrator of the estate of his deceased son, Fred, appeals the trial court's January 12, 2001 order granting summary judgment in favor of Parkland Hospital.[1] In four issues, Dillard contends the trial court erred in granting summary judgment because he pleaded a health care liability claim against Parkland under article 4590i, the Medical Liability and Insurance Improvement Act. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 1.03(a)(4) (Vernon Supp.2002). We affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

On April 4, 1998, Fred was injured in an automobile accident and transported to

---

1. Dillard does not appeal the trial court's order denying his motion for summary judg- ment.

Parkland Hospital. That same evening, Fred died in the operating room as a result of severe injuries. A nurse at Parkland notified Dillard that Fred had died. Dillard and his wife traveled from Virginia to see Fred. When they arrived at Parkland early in the morning on April 5, the chaplain escorted the parents to Parkland's morgue to view Fred's body. Emergency room nurses moved a body into the viewing area. Although the chaplain and nurses warned the parents that the face and chest were mutilated and bloody, the parents wanted to see their son. After Dillard hugged and kissed the disfigured body, he realized this deceased person was not his son. Dillard could not find any of Fred's birthmarks or tattoos. The chaplain checked the body tags and discovered the wrong body had been presented for viewing. After stepping outside the morgue, the chaplain was told by Dillard he got blood on his hand during the viewing of the wrong body; Dillard immediately washed the blood off. After the nurses located Fred's body and apologized for the mistake, Dillard and his wife viewed Fred's body, which had only a small laceration on the head. Dillard described Fred's appearance "as if he had died in his sleep."

In June 2000,[2] Dillard amended his petition to include claims against Parkland on his behalf as well as on Fred's behalf. Parkland responded to the amended petition asserting the affirmative defenses of sovereign immunity and statute of limitations. In Dillard's second amended petition, he alleged Parkland was negligent and/or grossly negligent in its handling of Fred's body and in its presentation of Fred's body to him for identification. Dillard further alleged Parkland's acts and/or omissions in breaching the standard of care proximately caused Dillard to suffer extreme emotional and mental pain, and Fred's body to suffer disrespect and insult. Dillard also alleged Parkland waived sovereign immunity by negligent use of tangible personal property, i.e., Fred's body, under the Texas Tort Claims Act.[3]

In its amended motion for summary judgment, Parkland raised two grounds: (1) Dillard's claims were barred by the two-year statute of limitations under section 16.003 of the Texas Civil Practice and Remedies Code; and (2) Parkland had sovereign immunity from liability, and the exception provided by the Texas Tort Claims Act did not apply. The trial court granted Parkland summary judgment "on all grounds as stated" in Parkland's amended motion for summary judgment.

## STANDARD OF REVIEW

■ We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp. of Am.*, 12 S.W.3d 172, 175 (Tex.App.-Dallas 2000, pet. denied). The standards for reviewing summary judgment under rule 166a(c) are well established. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985); *Orozco v. Dallas Morning News, Inc.*, 975 S.W.2d 392, 394 (Tex.App.-Dallas 1998, no pet.). When a defendant moves for summary judgment on its affirmative defenses, it must conclusively prove all the essential elements of its defense as a mat-

---

**2.** The file-stamp date on Dillard's amended petition in the appellate record is illegible. The clerk's record index states "Plaintiff's Amended Petition, July 6, 2000." In its brief, Parkland states the amended petition was filed on June 16, 2000. In his brief, Dillard states the amended petition was filed on June 15, 2000.

**3.** Dillard did not assert any cause of action against Parkland for acts or omissions occurring before Fred's death.

ter of law, leaving no genuine issues of material fact. *Seagraves v. City of McKinney*, 45 S.W.3d 779, 782 (Tex.App.-Dallas 2001, no pet.). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Halsey v. Dallas County, Tex.*, 68 S.W.3d 81, 84 (Tex.App.-Dallas 2001, pet. granted). Once the defendant establishes its right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact, thereby precluding summary judgment. *Muckelroy v. Richardson Indep. Sch. Dist.*, 884 S.W.2d 825, 828 (Tex.App.-Dallas 1994, writ denied) (citing *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979)). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon*, 690 S.W.2d at 548–49. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Id.*

### STATUTE OF LIMITATIONS

Parkland contends Dillard's claim was filed two years and seventy-two days after the alleged event. Parkland argues Dillard was not a patient at Parkland, therefore he cannot bring a health care liability claim under article 4590i and receive the seventy-five day tolling period for the statute of limitations. Parkland asserts Dillard's claim is not a health care liability claim thus it is barred by the two-year statute of limitations under section 16.003 of the civil practice and remedies code for personal injury claims. Lastly, Parkland argues Dillard can assert only a claim for his injuries, and not Fred's, because a corpse cannot suffer injury or death.

Dillard contends he timely filed his claim against Parkland. Specifically, Dillard ar-

gues he has a health care liability claim because: (1) Parkland is a health care provider as defined under article 4590i, (2) Fred, although deceased, was a patient, (3) Parkland breached its duty and standard of care by disrespecting and mishandling Fred's body and in the steps it took to present Fred's body to appellant, and (4) Dillard's timely notice to Parkland of the potential claim of medical malpractice committed against Fred invoked the seventy-five-day tolling period. Dillard also contends he and Fred both suffered injuries: Dillard suffered extreme emotional distress and mental anguish, and Fred's body suffered disrespect and insult.

When the defendant moves for summary judgment on the affirmative defense of the statute of limitations, the defendant assumes the burden of showing as a matter of law that the lawsuit was time barred. *See Finley v. Steenkamp*, 19 S.W.3d 533, 541 (Tex.App.-Fort Worth 2000, no pet.). Thus, the summary judgment record must show as a matter of law that the limitations period began and ended before Dillard initiated his lawsuit against Parkland. If the plaintiff asserts that a tolling provision applies, the defendant must conclusively negate the tolling provision's application to show its entitlement to summary judgment. *See id.* Therefore, Parkland must conclusively negate the applicability of section 4.01(c), the tolling provision under article 4590i, to show its entitlement to summary judgment. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 4.01(c).

Parkland argues that because Dillard does not have a health care liability claim under article 4590i, Dillard's lawsuit is barred by the general two-year statute of limitations. *See id.* § 1.03(a)(4); TEX. CIV. PRAC. & REM.CODE ANN. § 16.003 (Vernon Supp.2002). We agree. Under section 10.01 of article 4590i, a health care liability

claim may be commenced if the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed. TEX.REV.CIV. STAT. ANN. art. 4590i, § 10.01. If the party bringing the health care liability claim provides notice to the health care provider at least sixty days before filing the lawsuit, then the two-year statute of limitations is tolled for seventy-five days. *Id.* § 4.01(a), (c); *see Thompson v. Cmty. Health Inv. Corp.,* 923 S.W.2d 569, 571 (Tex.1996).

The record shows Dillard sent Parkland notice under section 4.01(a) within two years after the event. Thus, the threshold issue is whether either Dillard or Fred has a health care liability claim under article 4590i. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 1.03(a)(4). Article 4590i defines "health care liability claim" as follows:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the patient, whether the patient's claim or cause of action sounds in tort or contract.

*Id.* It is undisputed that Parkland is a health care provider. *See id.* § 1.03(a)(3).[4] Dillard asserts Parkland's departure from accepted standards of care proximately caused injury to him and to Fred, the patient.

The Medical Liability and Insurance Improvement Act was enacted in response to the increasing number of health care liability claims that created a medical malpractice insurance crisis and impacted the cost of health care. *See id.* § 1.02(a). The purpose of the Act is to reduce excessive frequency of health care liability claims without unduly restricting a claimant's rights any more than necessary. *See id.* § 1.02(b)(1), (2). With this purpose in mind, we review Dillard's claims against Parkland.

■ First, we address Dillard's claim brought on Fred's behalf. Dillard argues that although Fred was deceased when Parkland mishandled his body, he was a patient; thus, Fred was entitled to be cared for in a manner as outlined in Parkland's procedures for handling corpses. Dillard further argues Fred's body suffered disrespect and insult as a result of Parkland's breach of the standard of care. Parkland argues Fred could not have suffered injury because he was already deceased.

Assuming, without deciding, that Fred remained a patient after his death and Parkland breached the standard of care, Fred's body must have suffered injury or death as a result of the breach of the standard of care for Fred to have a health care liability claim under article 4590i. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 1.03(a)(4). Because it is undisputed that Fred was deceased when Parkland allegedly mishandled the body, Parkland's acts and/or omissions did not cause Fred's death. The remaining issue is whether Fred's body suffered injury. Dillard asserts that Fred's body suffered disrespect and insult, not any physical injuries. If Fred's body had been abused, the criminal law prescribes penalties. *See* TEX. PEN.

---

4. " 'Health care provider' is defined as 'any person, partnership, professional association, corporation, facility, or institution duly licensed or chartered by the State of Texas to provide health care as a registered nurse, hospital, dentist, podiatrist, pharmacist, or nursing home, or an officer, employee, or agent thereof acting in the course and scope of his employment.' " TEX.REV.CIV. STAT. ANN. art. 4590i, § 1.03(a)(3).

CODE ANN. § 42.08 (Vernon 1994). There was no physical injury to Fred's body.[5] And because the brain ceases to function upon death, a deceased person is incapable of suffering mental injuries, such as mental anguish or emotional distress. We conclude, as a matter of law, that Fred did not suffer any post-death injury. Consequently, Dillard does not have a health care liability claim or personal injury claim on Fred's behalf.

■ Next, we address Dillard's individual claim.[6] Because it is undisputed that Dillard was not a patient at Parkland, we conclude his claim is not a health care liability claim as defined in article 4590i. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 1.03(a)(4). Accordingly, Dillard's claim against Parkland is governed by the general two-year statute of limitations period for a personal injury cause of action. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.003; *Finley*, 19 S.W.3d at 542. A cause of action for personal injury under section 16.003 accrues when a wrongful act causes an injury. *See Finley*, 19 S.W.3d at 542. In this case, it is undisputed that Dillard filed his claim against Parkland beyond the two-year statute of limitations. Consequently, as a matter of law, Dillard's claim is barred by the two-year statute of limitations.

We resolve Dillard's four issues against him. Having concluded as a matter of law that Dillard has no health care liability claim to assert on Fred's behalf and Dillard's individual claim is barred by the statute of limitations, we do not address sovereign immunity, Parkland's only other asserted ground for summary judgment. *See* TEX.R.APP. P. 47.1. We hold the trial court did not err in granting summary judgment in favor of Parkland.

We affirm the trial court's judgment.

---

5. Dillard's counsel responded negatively when asked during oral argument whether Fred's body suffered any physical injury.

6. In oral argument before this Court, Dillard abandoned his individual damages claim.