COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-072-CV
  
  
CLIFFORD B. RODGERS                                                          APPELLANT
  
V.
  
THE COMMISSION FOR                                                            APPELLEE
LAWYER DISCIPLINE
  
  
------------
 
FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
        This 
is an appeal from a jury verdict finding that appellant Clifford B. Rodgers 
violated the State Bar of Texas rules of professional conduct regarding trade 
name usage, false or misleading advertising, required advertising disclosures, 
and filing of advertising with the State Bar.  See Tex. Disciplinary R. Prof’l Conduct 
7.01(a), (e), 7.02(a), 7.04(b), (j), 7.07(b), reprinted in Tex. Gov’t Code Ann., tit. 2, subtit. 
G app. A (Vernon 1998) (Tex. State Bar R. 
art. X, § 9).  After a jury found that Rodgers violated all of these 
rules, the trial court determined that Rodgers should receive a two-year, fully 
probated suspension of his law license.
        In 
six issues on appeal, Rodgers contends that (1 & 2) the evidence is legally 
and factually insufficient to support the jury’s findings that he violated the 
trade name and false or misleading advertising rules, (3) as a matter of law he 
did not violate the disclosure rule, (4) as a matter of law he did not violate 
the filing of advertising rule because the advertisement was either exempt from 
the filing requirement or because appellee the Commission for Lawyer Discipline 
(CLD) did not conclusively prove that it was not exempt, (5) the trial court 
abused its discretion in admitting the testimony of CLD’s expert, and (6) the 
trial court abused its discretion in assessing Rodgers’s punishment.  
Because we determine that the evidence is sufficient to prove that Rodgers 
violated the trade name and false or misleading advertising rules, that the 
jury’s verdict regarding whether he violated the disclosure rule controls, 
that the advertisement was not exempt from the filing rule and CLD did not have 
the burden to prove it was, and that the trial court did not abuse its 
discretion in admitting the expert testimony of Lynette Fons or setting 
punishment, we affirm the trial court’s judgment.
Background Facts
        In 
1994 Rodgers began running an advertisement in the Southwestern Bell Yellow 
Pages under the name “Accidental Injury Hotline.”  The advertisement 
was located in the “Attorney Referral & Information Serv” section of the 
book.  The advertisement did not list Rodgers’s or any other attorney’s 
name, nor did it make any other disclosures required by the rules.  See 
Tex. Disciplinary R. Prof’l Conduct 
7.04.  It did contain a telephone number and list of topics regarding what 
to do in case of accident or injury.
        After 
pressing the code number next to one of the topic listings, the caller was 
directed to a prerecorded message advising the caller about that specific 
topic.  At the end of each prerecorded message, the caller was prompted as 
follows: “To arrange a free, no obligation consultation about your case with 
an attorney, now press ‘0‘.” If the caller pressed 0, the call was 
forwarded to Rodgers’s office, with the following recording:
 
Your 
call is being forwarded to the Fort Worth office of attorney Clifford Rodgers, 
the sponsor of the Accidental Injury Hotline, which is copyrighted 1994 by him.
 
He is 
licensed to practice law by the Texas Supreme Court and is not certified by the 
Texas Board of Legal Specialization.
 
This is 
an advertisement.
 
If the call took place 
after office hours, the caller was prompted to either press the “*” key for 
emergency matters or to leave a message.
        Rodgers 
subsequently received a letter from the State Bar dated August 15, 1994, which 
indicated that the Bar had initiated a grievance committee complaint against 
Rodgers about the advertisement. The letter indicated that the advertisement was 
“alleged to be in violation of [former] Rule 7.04 Texas Disciplinary Rules of 
Professional Conduct, in that said rule forbids attorneys from practicing under 
a trade name or a name that is misleading as to the identity of the lawyer or 
lawyers practicing under that name.”  See former Tex. Disciplinary R. Prof’l Conduct 
7.04, 777-778 S.W.2d (Tex. Cases) CXV (1990, superseded 1995) (current version 
at Tex. Disciplinary R. Prof’l Conduct 
7.01(a)).  Rodgers later received a letter indicating that an investigatory 
panel of the grievance committee found that he had not committed professional 
misconduct and that the matter had been dismissed.  However, the letter 
also warned that “the complainant has the right to amend the complaint and 
refile with new information.”
        In 
1995, new rules of professional disciplinary conduct regulating attorney 
advertising became effective. 892-893 S.W.2d (Tex. Cases) XXXIII (1995) 
(providing that rules would become effective 120 days after judgment in Texans 
Against Censorship); see Texans Against Censorship, Inc. v. State Bar of 
Tex., 888 F. Supp. 1328 (E.D. Tex. 1995) (judgment date March 31, 
1995).  The new rules imposed additional regulations on attorney 
advertising, including, among other things, prohibiting an attorney from 
advertising under a trade name and requiring all attorney advertising—with 
certain enumerated exceptions—to be filed with an advertising review committee 
of the State Bar.  See Tex. 
Disciplinary R. Prof’l Conduct 7.01(e), 7.07.  Rodgers was aware 
of the new rules and continued to run his advertisements.  He did not send 
copies to the review committee for approval.
        In 
1997, a few days before the deadline for approving copy for the upcoming 
publication of the Southwestern Bell Yellow Pages, Rodgers was contacted by a 
representative of Southwestern Bell, who told Rodgers that—based on its 
communications with the Bar—it could no longer run his advertisement under the 
“Attorney Information Referral Service” heading.
        Rodgers 
filed suit against the State Bar and Southwestern Bell and obtained a temporary 
order restraining the Bar from talking to Southwestern Bell and telling it not 
to run Rodgers’s advertisement and restraining Southwestern Bell from printing 
the directory without the advertisement in it.  After a hearing, Rodgers 
and Southwestern Bell entered into a rule 11 agreement to run the advertisement 
with a disclaimer indicating that the advertisement was not a referral service, 
but an information service.  See Tex. R. Civ. P. 11.  The State Bar 
was not a party to the rule 11 agreement. Rodgers then nonsuited the litigation.
        Rodgers 
subsequently ran the advertisement in the 1997 Southwestern Bell Yellow Pages, 
GTE Everything Pages, and Transwestern World Pages. CLD initiated the grievance 
process against Rodgers in 1998 and filed this suit in November 1999.
 
Whether the Law of 
the Case Doctrine Applies
 
        CLD 
initially contends that Rodgers’s legal insufficiency challenges are barred by 
the law of the case doctrine. Another panel of this court has previously decided 
that CLD brought forward sufficient evidence to survive a no-evidence summary 
judgment filed by Rodgers during this litigation. See Comm’n for Lawyer 
Discipline v. C.R., 54 S.W.3d 506, 518 (Tex. App.—Fort Worth 2001, pet. 
denied). CLD argues that because in order to survive a no-evidence summary 
judgment, the nonmovant must bring forward more than a scintilla of evidence on 
the challenged issue—and because in order for a jury finding to be legally 
sufficient there must be more than a scintilla of evidence supporting it—this 
court’s prior ruling in the no-evidence summary judgment portion of this case 
controls. We disagree.
        The 
law of the case doctrine is defined as “that principle under which questions 
of law decided on appeal to a court of last resort will govern the case 
throughout its subsequent stages.” Briscoe v. Goodmark Corp., 102 
S.W.3d 714, 716 (Tex. 2003) (citing Hudson v. Wakefield, 711 S.W.2d 628, 
630 (Tex. 1986)).  The doctrine prohibits relitigation of a question of law 
unless (1) the earlier holding is clearly erroneous or (2) the later stage of 
litigation presents different parties, different issues, or more fully developed 
facts.  Id. at 716-17; Hudson, 711 S.W.2d at 630.
        Here, 
the determination of whether more than a scintilla of evidence is shown in the 
record is being made at two different stages of litigation and may involve more 
fully developed facts at either stage.  When reviewing a no-evidence 
summary judgment motion, we may consider only the summary judgment record.  
See Brookshire v. Longhorn Chevrolet Co., 788 S.W.2d 209, 213 (Tex. 
App.—Fort Worth 1990, no writ); see also Tex. R. Civ. P. 166a(i) & cmt.-1997 
(providing that trial court must grant motion unless respondent produces 
“summary judgment evidence” raising a genuine issue of material fact and 
noting that “[t]he existing rules continue to govern the general requirements 
of summary judgment practice”).  When reviewing the legal sufficiency of 
the evidence to support a jury finding, we may review only the evidence 
introduced at trial.  See Town of Sunnyvale v. Mayhew, 905 S.W.2d 
234, 258 (Tex. App.—Dallas 1994), rev’d on other grounds, 964 S.W.2d 
922 (Tex. 1998), cert. denied, 526 U.S. 1134 (1999); Noble 
Exploration, Inc. v. Nixon Drilling Co., 794 S.W.2d 589, 592 (Tex. 
App.—Austin 1990, no writ).  It is possible that evidence considered at 
summary judgment may not have been introduced into the record at trial or vice 
versa.  Thus, we do not believe the law of the case doctrine is applicable 
here.  We will review the sufficiency of the evidence based on the evidence 
adduced at trial.
 
Legal and Factual 
Sufficiency of Evidence to Prove Violation of Trade Name
and False or 
Misleading Advertising Rules
 
Standard of Review
        In 
determining a “no-evidence” issue, we are to consider only the evidence and 
inferences that tend to support the finding and disregard all evidence and 
inferences to the contrary. Bradford v. VentoI, 48 S.W.3d 749, 754 (Tex. 
2001); Cont’l Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 
1996); In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). 
Anything more than a scintilla of evidence is legally sufficient to support the 
finding.  Cazarez, 937 S.W.2d at 450; Leitch v. Hornsby, 935 
S.W.2d 114, 118 (Tex. 1996).  More than a scintilla of evidence exists if 
the evidence furnishes some reasonable basis for differing conclusions by 
reasonable minds about the existence of a vital fact.  Rocor Int’l, 
Inc. v. Nat’l Union Fire Ins. Co., 77 S.W.3d 253, 262 (Tex. 2002).
        A 
“no-evidence” issue may be sustained only when the record discloses one of 
the following: (1) a complete absence of evidence of a vital fact; (2) the court 
is barred by rules of law or evidence from giving weight to the only evidence 
offered to prove a vital fact; (3) the evidence offered to prove a vital fact is 
no more than a mere scintilla of evidence; or (4) the evidence establishes 
conclusively the opposite of a vital fact.  Uniroyal Goodrich Tire Co. 
v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998) (citing Robert W. Calvert, “No 
Evidence" and "Insufficient Evidence" Points of Error, 
38 TEX. L. REV. 
361, 362-63 (1960)), cert. denied, 526 U.S. 1040 (1999).
        An 
assertion that the evidence is “insufficient” to support a fact finding 
means that the evidence supporting the finding is so weak or the evidence to the 
contrary is so overwhelming that the answer should be set aside and a new trial 
ordered.  Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965).  We 
are required to consider all of the evidence in the case in making this 
determination.  Mar. Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 
(Tex.), cert. denied, 525 U.S. 1017 (1998).
Violation of Trade 
Name Rule
        Rule 
7.01(a) provides that “[a] lawyer in private practice shall not practice under 
a trade name, a name that is misleading as to the identity of the lawyer or 
lawyers practicing under such name, or a firm name containing names other than 
those of one or more of the lawyers in the firm.”  Tex. R. Disciplinary Conduct 
7.01(a).  Rule 7.01(e) provides that “[a] lawyer shall not advertise in 
the public media or seek professional employment by written communication under 
a trade or fictitious name.” Id. 7.01(e).  Rodgers contends that 
the trade name rule prohibits only the use of deceptive trade names and that 
rule 7.01(a) defines trade name as “a name that is misleading as to . . . 
identity.”
        We 
reject Rodgers’s interpretation of rule 7.01(a).  By its plain language, 
the rule prohibits a lawyer’s use of three types of names: (1) a trade name; 
(2) a name that is misleading as to the lawyer’s identity; or (3) a firm name 
with names other than those of the lawyers in the firm. Id. 7.01(a); see 
Tex. Gov’t Code Ann. § 
311.011(a) (Vernon 1998) (providing that “[w]ords and phrases shall be read in 
context and construed according to the rules of grammar and common 
usage”).  We have previously defined a “trade name” as “a 
designation that is adopted and used by a person either to designate a good he 
markets, a service he renders, or a business he conducts.”  C.R., 
54 S.W.3d at 515. Moreover, comment 1 to rule 7.01 notes that “[t]rade names 
are inherently misleading.”  Tex. 
R. Disciplinary Conduct 7.01 cmt. 1.  And, in ruling that rule 7.01 
does not infringe on the First Amendment’s protection of commercial speech, a 
federal district court has recognized the inherent risks of even a nondeceptive 
trade name used in attorney advertising because, by not identifying the name of 
the professional practicing under the trade name, the name frees the 
professional from dependence on his own personal reputation.  Texans 
Against Censorship, Inc., 888 F. Supp. at 1350 (analogizing to United 
States Supreme Court opinion regarding risks of use of nondeceptive trade name 
in optometrists’ practices and holding rule limiting use of trade names 
constitutional). Thus, we conclude that to be prohibited under rule 7.01 a trade 
name does not have to be facially deceptive.
        The 
evidence at trial showed that the advertisements Rodgers placed in the telephone 
books contained the name “Accidental Injury Hotline,” but not Rodgers’s 
name or any other attorney’s name. Rodgers obtained a copyright on the name 
“Accidental Injury Hotline,” registered a service mark for the hotline, and 
received more than fifty percent of his business from the hotline.  Rodgers 
admitted to starting the hotline solely as an advertisement for his business 
because he thought “informational positioning,” or providing helpful 
information to consumers to position the provider as knowledgeable, was the best 
way to obtain customers through advertising.  The evidence also showed that 
the only place Rodgers used the name was in the advertisements; however, the 
fact that Rodgers used the name in only one facet of his business does not 
outweigh the evidence that with regard to the only medium in which he advertised 
his business, he used the name to designate a service he rendered or a business 
he conducted.  We hold that the evidence is both legally and factually 
sufficient to prove Rodgers violated rule 7.01(a) and (e).  We overrule 
Rodgers’s second issue.
Violation of False or 
Misleading Advertising Rule
        Rodgers 
further contends that the evidence is legally and factually insufficient to 
prove that he violated rule 7.02(a) by making a false or misleading 
communication.  Rule 7.02 provides as follows:
 
(a) A 
lawyer shall not make a false or misleading communication about the 
qualifications or the services of any lawyer or firm. A communication is false 
or misleading if it:
 
(1) 
contains a material misrepresentation of fact or law, or omits a fact necessary 
to make the statement considered as a whole not materially misleading;
 
(2) is 
likely to create an unjustified expectation about results the lawyer can 
achieve, or states or implies that the lawyer can achieve results by means that 
violate these rules or other law;
 
(3) 
compares the lawyer's services with other lawyers' services, unless the 
comparison can be substantiated by reference to verifiable, objective data;
 
(4) 
states or implies that the lawyer is able to influence improperly or upon 
irrelevant grounds any tribunal, legislative body, or public official; or
 
(5) 
designates one or more specific areas of practice in an advertisement in the 
public media or in a written solicitation unless the advertising lawyer is 
competent to handle legal matters in each such area of practice.
 
Tex. R. Disciplinary Conduct 7.02(a).
        Rodgers 
claims that federal case law regarding the Lanham Act and trademark infringement 
cases required CLD to introduce evidence that at least one person was actually 
confused by Rodgers’s advertisement.[1]  But 
Rodgers cites no authority applying this requirement outside the context of 
those cases, including the attorney disciplinary context.  And the only 
case this court found addressing this issue in the professional 
disciplinary-advertising context concluded that the State of Maryland did not 
have to prove that a specific customer had been misled or deceived by the 
advertising.  See Barnett v. Md. State Bd. of Dental Exam’rs, 444 
A.2d 1013, 1020 (Md. 1982).
        Rule 
7.02 itself does not require evidence of actual confusion.  In the only 
other reported case from this State that we have found, Musslewhite v. State 
Bar of Texas, 786 S.W.2d 437 (Tex. App.—Houston [14th Dist.] 1990, writ 
denied), cert. denied, 501 U.S. 1251 (1991), the court held that an 
attorney’s press release, letters, and advertisements were false and 
misleading on their face because they referred to a “team of internationally 
renowned U.S. lawyers” but did not identify those lawyers, and the information 
in them was not “susceptible to reasonable verification by the 
public.”  Id. at 441.  The court did not require any showing 
that one or more persons had been actually confused or misled by the materials.
        The 
purpose of the rules is to protect the public from deceptive advertising, which 
the Supreme Court has recognized as a substantial governmental interest.  Texans 
Against Censorship, Inc., 888 F. Supp. at 1348 (citing Edenfield v. Fane, 
507 U.S. 761, 768, 113 S. Ct. 1792, 1799 (1993)).  A federal court has 
recognized that one advantage to Texas’s advertising filing requirements is 
that
 
the 
state bar is not required to rely on consumers, who may not have enough 
information about the legal system in general, or a particular lawyer, to detect 
false or misleading advertising from lawyers.  The state bar will not be 
forced to rely hereafter on consumers, to find deceptive advertising or 
misleading solicitation letters.  Instead, the filing process will enable 
the state bar itself to winnow false or deceptive advertising from truthful 
advertising.
 
Id. at 1364.

        The 
evidence at trial showed that the advertisements did not identify Rodgers, the 
only attorney available through the hotline was Rodgers, and the caller did not 
learn the name of the attorney he would be referred to until he pressed 
“0.”  Thus, the only way a person could verify which attorney’s 
office he would be speaking to was to actually connect to the attorney’s 
office.  This type of advertising creates the same types of problems as the 
use of a trade name, which is inherently misleading: a potential consumer has no 
name or other information to help her evaluate whether she wants to contact a 
particular attorney prior to being connected to that attorney’s office. In 
fact, this advertisement is similar to a sample advertisement that the State Bar 
published as an example of a noncompliant advertisement in a 1995 Texas Bar 
Journal article that Rodgers included as one of this trial exhibits. That 
advertisement listed no attorney name or office information, just a telephone 
number and two trade names, “Child Support & Locating Clinic” and 
“Debt Relief Clinic.”  58 Tex. 
B.J. 664 (1995).
        We 
hold that the evidence is legally and factually sufficient to support the 
jury’s finding that Rodgers made a false or misleading communication in 
violation of rule 7.02(a).  We overrule Rodgers’s first issue.
Whether Presence 
of Required Disclaimers in Second Part of Message
Satisfies Rule 
7.04
 
        In 
his third issue, Rodgers claims that as a matter of law, he did not violate rule 
7.04(b) and (j), which require that an advertisement in the public media contain 
certain disclaimers, because even though the disclaimers were not included in 
the print advertisement, they were included in the audio recording once a 
customer pressed the button indicating he wanted to speak to an attorney. He 
contends that the advertisement becomes a lawyer advertisement only when the 
caller presses the button indicating he or she wants to speak to a lawyer. 
Rodgers concedes, however, that if the disclosures are to be required in the 
print portion of the advertisement, then he violated rule 7.04(b) and (j).  
Tex. Disciplinary R. Prof’l Conduct 
7.04(b), (j).
        Rodgers 
contends that we must determine whether the disclaimers were required in the 
print portion of the advertisement by applying the “anti-dissection” rule 
set forth in Lanham Act and trademark infringement cases. Again, Rodgers has not 
cited any cases indicating that these legal authorities have been applied in an 
attorney disciplinary case, nor do we believe they are appropriately applied to 
the attorney advertising context.
        Comment 
14 to rule 7.04 provides that the rule was meant to protect the public from 
being misled by attorney advertisements as to “the fees that will be charged, 
the location where services will be provided, or the attorney who will be 
performing these services.” Id. 7.04 cmt. 14.  One of the purposes 
of the rule is to “prohibit the same sort of ‘bait and switch’ advertising 
tactics by lawyers that are universally condemned.”  Id.
        As 
we have previously discussed, an advertisement can be misleading by omission. In 
an advertisement such as Rodgers’s, a caller wishing to speak to an attorney 
cannot verify any information regarding that attorney before pressing the button 
to speak to an attorney.  CLD claims that “[o]ne of the fundamental 
purposes behind Rule 7.04 is to allow consumers to make an informed choice 
before seeking legal services, by ascertaining the names (and reputations), 
locations, and qualifications of potential attorneys.”  By not including 
his name or any of the required disclosures in the print portion of the 
advertisement, Rodgers violated this purpose.  Thus, we hold that as a 
matter of law, the disclaimers were required to be in the printed portion of the 
advertisement.  We overrule Rodgers’s third issue.
Whether Rodgers’s Advertisement Violated Rule 
7.07(b)
        The 
jury concluded that Rodgers violated rule 7.07(b) by failing to file the 
advertisement with the State Bar Advertising Review Committee (ARC) before its 
first dissemination.  Rodgers disputes this finding on two grounds: (1) the 
rule does not apply to advertisements submitted before July 29, 1995 when the 
filing requirement first became effective and (2) it was CLD’s burden to 
procure a finding that the public service announcement exception to the rule did 
not apply, and CLD did not.  Rodgers argues that because CLD did not 
conclusively prove the nonexistence of the exemption, he could not have violated 
the rule.
 
Whether Pre-1995 Advertisements are 
“Grandfathered” Out of Rule 7.07(b) Filing Requirements?

        Rule 
7.07(b) provides that “a lawyer shall file with [ARC], either before or 
concurrently with the first dissemination of an advertisement in the public 
media, a copy of that advertisement.” Tex. 
Disciplinary R. Prof’l Conduct 7.07(b). Rodgers contends that this rule 
does not apply to his 1997 advertisement because it was first disseminated in 
1994, before the effective date of the rule. CLD contends that the phrase 
“first dissemination of an advertisement in the public media” means the 
first dissemination after the effective date of the rule.
        To 
determine which interpretation of the rule is correct, we must employ common 
rules of statutory construction. See O’Quinn v. State Bar of Tex., 763 
S.W.2d 397, 399 (Tex. 1988) (holding that the rules of disciplinary conduct are 
to be treated like statutes). Our primary objective in construing a statute is 
to determine and give effect to the drafters’ intent. See Mitchell Energy 
Corp. v. Ashworth, 943 S.W.2d 436, 438 (Tex. 1997) (orig. proceeding); Finley 
v. Steenkamp, 19 S.W.3d 533, 542 (Tex. App.—Fort Worth 2000, no 
pet.).  If possible, we are to discern intent from the plain meaning of the 
words of the statute. See Albertson’s, Inc. v. Sinclair, 984 S.W.2d 
958, 960 (Tex. 1999); Monsanto Co. v. Cornerstones Mun. Util. Dist., 865 
S.W.2d 937, 939 (Tex. 1993); Finley, 19 S.W.3d at 542.  We do not, 
however, interpret statutory language so rigidly “that the almost certain 
intent of the [drafter] is disregarded.” City of LaPorte v. Barfield, 
898 S.W.2d 288, 292 (Tex. 1995); Finley, 19 S.W.3d at 542.  Instead, 
the court must consider the consequences that would follow from its construction 
of a statute and avoid absurd results.  See Tex. Gov't Code Ann. § 311.023; Sharp 
v. House of Lloyd, Inc., 815 S.W.2d 245, 249 (Tex. 1991); Finley, 19 
S.W.3d at 542.  Moreover, intent must be determined from the entire act, 
not from isolated portions thereof.  See Jones v. Fowler, 969 S.W.2d 
429, 432 (Tex. 1998); Finley, 19 S.W.3d at 543.
        The 
amendments to the advertising rules were promulgated in response to the 
perception that the prior rules did not adequately protect Texas citizens from 
false or deceptive lawyer advertising and solicitation. See Texans Against 
Censorship, Inc., 888 F. Supp. at 1335, 1348. As an example of the problem 
the State Bar faced in enforcing the advertising rules, the Texans Against 
Censorship case pointed to a misleading attorney solicitation letter that 
was sent to between 300,000 and 400,000 recipients; none of the recipients ever 
brought the misleading nature of the letter to the attention of the attorney or 
the State Bar. Id. at 1364.  The court stated that “[c]learly, if 
a lawyer is able to distribute 300,000 to 400,000 misleading solicitation 
letters without reprisal, the state bar’s discernment of an enforcement 
problem is well-founded.  Moreover, a filing system provides the state bar 
an effective oversight procedure to prevent consumer deception.”  Id.  
Thus, the purpose of the filing rules is to provide a more effective mechanism 
for the State Bar to identify nonconforming advertisements than under the prior 
rules.
        Although 
an attorney may apply for preapproval of an advertisement, preapproval is not 
required. Tex. R. Disciplinary Conduct 
7.07 cmt. 4.  Rule 7.07 provides that filing may be made “concurrently 
with” the first dissemination of an advertisement.  Id. 7.07(b) . 
Along with a copy of the advertisement, the attorney must file “a statement of 
when and where the advertisement has been, is, or will be used.” Id. 
7.07(b)(3) (emphasis added).  Furthermore, the rule contains an extensive 
list of advertisements that are exempt from the filing rules, but does not 
explicitly exempt advertisements that were first disseminated before rule 7.07 
took effect.  See, e.g., Unigard Sec. Ins. Co. v. Schaefer, 572 
S.W.2d 303, 307 (Tex. 1978) (holding that when statute contains specific 
exclusions or exceptions, no others usually apply).
        Considering 
the purpose of the rule, along with the plain language of the entire rule taken 
together, we construe the rule as requiring an advertisement to be filed upon 
its first dissemination after July 29, 1995, the effective date of the 
rule.  Were we to hold otherwise, we would be subverting the purpose of the 
rule by allowing a significant amount of pre-existing advertising to be exempt 
from the Bar’s only effective enforcement mechanism for protecting consumers 
from false and misleading attorney advertising.  See Tex. Gov’t Code Ann. § 311.021 
(presuming that public interest is favored over private interest when statute 
enacted), § 311.023 (providing that in construing statute court may consider 
“object sought to be attained,” “circumstances under which the statute was 
enacted,” and “consequences of a particular construction”).
        We 
hold that the filing requirements of rule 7.07 apply to advertisements 
previously submitted before the effective date of rule 7.07 that are also being 
submitted for the first time after the effective date of the rule.
  
Who Had the Burden to Prove the Advertisement 
was not a Public Service Announcement?

        An 
advertisement is not subject to the filing requirement if it contains only 
information that “the lawyer or firm is a sponsor of a . . . public service 
announcement.” Tex. R. Disciplinary P. 
7.07(d)(1)(x). The trial court’s charge asked the jury, “Do you find that 
[Rodgers] published advertisements indicating that he was the sponsor of a 
public service announcement?” The jury answered “no” as to all three 
advertisements. Rodgers contends the court’s charge misplaced the burden of 
proof, requiring Rodgers to prove that the advertisement was a public service 
announcement, rather than requiring CLD to prove that Rodgers did not sponsor a 
public service announcement. We disagree.
        This 
case is similar to State Bar of Texas v. Dolenz, in which Dolenz was 
accused of violating former State Bar Rule 5-104. 3 S.W.3d 260, 266 (Tex. 
App.—Dallas 1999, no pet.). Former rule 5-104 provided that “[a] lawyer 
shall not enter into a business transaction with a client if they have differing 
interests therein and if the client expects the lawyer to exercise his 
professional judgment therein for the protection of the client, unless the 
client has consented after full disclosure.”  Tex. State Bar R., art. XII, § 8, DR 
5-104(A) (Tex. Code of Prof’l Resp.), 34 Tex. B.J. 758 (1971, superseded 
1990).  There was no evidence in the record showing that Dolenz failed to 
disclose the situation to the client, nor was there any evidence the client 
refused consent. But the Bar contended that whether Dolenz made a full 
disclosure and whether the client consented was in the nature of an affirmative 
defense that Dolenz had the burden of proving. Dolenz, 3 S.W.3d at 
266-67.
        The 
court of appeals agreed with the Bar, holding that whether the client had 
consented after full disclosure was a matter constituting an avoidance or 
affirmative defense to the Bar’s allegation that Dolenz had entered into an 
improper business relationship with his client. Id. at 267; see Tex. R. Civ. P. 94.  An affirmative 
defense establishes an independent reason why the plaintiff should not recover 
on its asserted cause of action.  Tex. Beef Cattle Co. v. Green, 921 
S.W.2d 203, 212 (Tex. 1996);  Aviation Composite Techs., Inc. v. CLB 
Corp., 131 S.W.3d 181, 189 (Tex. App.—Fort Worth 2004, no pet.).
        Here, 
CLD claimed that Rodgers violated rule 7.07(b) by failing to submit the 
advertisement to the ARC. Rodgers admits he did not submit the advertisement for 
review, but contends that he was not obligated to do so because it fits one of 
the exceptions to the rule.  Thus, Rodgers asserts an independent reason 
why CLD should not recover on its claim that he violated rule 7.07(b) and had 
the burden of proof on that issue.[2]  Because 
Rodgers had the burden of proof, his challenge on appeal that CLD failed to 
conclusively prove the advertisement was not a public service announcement 
fails.[3]  We overrule Rodgers’s fourth issue.
Is Fons’s Testimony Reliable?
        Rodgers 
further complains about the trial court’s admission into evidence of the 
expert testimony of Lynette Fons, who opined that the advertisements violated 
the foregoing disciplinary rules. Rodgers claims that Fons used the wrong legal 
standards to determine whether violations occurred, that she was unqualified, 
and that her testimony is unreliable. Rodgers bases this claim on the fact that 
Fons’s position did not require her to—and she never attempted to in this 
case—have contact with the public about the advertisements she reviewed to 
determine if a member of the public was actually misled by the 
advertisement.  Also, while she opined that the advertisement was not a 
public service announcement, she admitted she was not an expert on public 
service announcements.
        Texas 
Rule of Evidence 702 governs the admissibility of expert testimony. Tex. R. Evid. 702; Gammill v. Jack 
Williams Chevrolet, Inc., 972 S.W.2d 713, 718 (Tex. 1998); E.I. du Pont 
de Nemours & Co. v. Robinson, 923 S.W.2d 549, 554 (Tex. 1995). Rule 702 
provides, “If scientific, technical, or other specialized knowledge will 
assist the trier of fact to understand the evidence or to determine a fact in 
issue, a witness qualified as an expert by knowledge, skill, experience, 
training, or education, may testify thereto in the form of an opinion or 
otherwise.” Tex. R. Evid. 702.
        Once 
the opposing party objects to proffered expert testimony, the proponent of the 
witness’s testimony bears the burden of demonstrating its admissibility. Guadalupe-Blanco 
River Auth. v. Kraft, 77 S.W.3d 805, 807 (Tex. 2002); Robinson, 923 
S.W.2d at 557. To be admissible, the proponent must demonstrate that (1) the 
expert is qualified and (2) the expert’s testimony is relevant and reliable. See 
Helena Chem. Co. v. Wilkins, 47 S.W.3d 486, 499 (Tex. 2001); Robinson, 
923 S.W.2d at 556; see also Kraft, 77 S.W.3d at 807.
        We 
review the court's determination under an abuse-of-discretion standard. See 
Kraft, 77 S.W.3d at 807; Helena Chem. Co., 47 S.W.3d at 499; Robinson, 
923 S.W.2d at 558. To determine whether a trial court abused its discretion, we 
must decide whether the trial court acted without reference to any guiding rules 
or principles; in other words, whether the act was arbitrary or unreasonable. See 
Carpenter v. Cimarron Hydrocarbons Corp., 98 S.W.3d 682, 687 (Tex. 2002); Downer 
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985), cert. 
denied, 476 U.S. 1159 (1986). Merely because a trial court may decide a 
matter within its discretion in a different manner than an appellate court would 
in a similar circumstance does not demonstrate that an abuse of discretion has 
occurred. Downer, 701 S.W.2d at 241-42.
        An 
abuse of discretion does not occur when the trial court bases its decisions on 
conflicting evidence. Davis v. Huey, 571 S.W.2d 859, 862 (Tex. 1978); see 
also Goode v. Shoukfeh, 943 S.W.2d 441, 446 (Tex. 1997). Furthermore, an 
abuse of discretion does not occur as long as some evidence of substantive and 
probative character exists to support the trial court’s decision. Butnaru 
v. Ford Motor Co., 84 S.W.3d 198, 211 (Tex. 2002); Holley v. Holley, 
864 S.W.2d 703, 706 (Tex. App.—Houston [1st Dist.] 1993, writ denied). An 
appellate court must uphold the trial court’s evidentiary ruling if there is 
any legitimate basis in the record for the ruling. Owens-Corning Fiberglas 
Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998).
        Fons 
testified that she is a lawyer in Houston and that her primary practice is trial 
work. She has been licensed since 1985. Since June 2002, Fons had been 
chairperson of the ARC. She had been a member of the committee since 1998. Fons 
testified that the committee meets every month and has reviewed hundreds of 
attorney advertisements.
        Fons 
testified that she read and spent hours reviewing the disciplinary rules related 
to attorney advertising, materials the committee provides to lawyers about the 
advertising rules, and ethics opinions regarding attorney advertising. She has 
also given CLE presentations on the advertising rules. Based on the evidence 
before the trial court, we cannot say the trial court abused its discretion in 
determining that Fons was qualified.
        Rodgers 
contends that Fons based her opinions on incorrect legal standards; these 
contentions correspond to his proposed interpretations of the rules. Having 
already rejected Rodgers’s interpretations of these rules, however, we do not 
believe that the fact Fons did not base her opinions on those interpretations 
makes her testimony unreliable. In addition, although she did testify that she 
was not an expert on public service announcements, CLD was not required to 
introduce expert testimony as to whether the advertisement qualified as a public 
service announcement. As we have previously held, it was Rodgers’s burden to 
do so.
        Furthermore, 
even without considering Fons’s testimony, the evidence presented at trial is 
sufficient to support the jury’s findings; thus, Fons’s testimony was merely 
cumulative of the other evidence in the case. See Tex. Dep’t of Transp. v. 
Able, 35 S.W.3d 608, 617 (Tex. 2000). Accordingly, we cannot conclude that 
the trial court abused its discretion in admitting Fons’s testimony. We 
overrule appellant’s fifth issue.
Did the Trial Court Abuse its Discretion in Setting 
Rodgers’s Punishment?
        Rodgers 
contends the trial court abused its discretion in sentencing him to a two-year, 
fully probated suspension because, “under the circumstances of this case, the 
sanction imposed smacks of punishment for [Rodgers] exercising [his] legal 
rights to determine how the [rules] should be applied to [his] advertising 
approach.” According to Rodgers, the fact that he chose to litigate this issue 
rather than change his advertisement is justified in light of the prior State 
Bar ruling that his advertisement did not violate the trade name prohibition and 
the settlement he entered into with Southwestern Bell, and he should have 
received no more than a public reprimand.
        Sanctions 
for professional misconduct may include disbarment, resignation in lieu of 
disbarment, indefinite disability suspension, suspension for a certain term, 
probation of suspension, interim suspension, public reprimand, and private 
reprimand. Tex. R. Disciplinary P. 
1.06(Y), reprinted in Tex. Gov’t 
Code Ann., tit. 2, subtit. G app. A-1 (Vernon Supp. 2004-05). A trial 
court has broad discretion to determine the consequences of professional 
misconduct. State Bar of Tex. v. Kilpatrick, 874 S.W.2d 656, 659 (Tex.), cert. 
denied, 512 U.S. 1236 (1994); Curtis v. Comm’n for Lawyer Discipline, 
20 S.W.3d 227, 234-35 (Tex. App.—Houston [14th Dist.] 2000, no pet.); Love 
v. State Bar of Tex., 982 S.W.2d 939, 944 (Tex. App.—Houston [1st Dist.] 
1998, no pet.). However, the judgment of a trial court in a disciplinary 
proceeding may be so light or heavy as to amount to an abuse of discretion. Kilpatrick, 
874 S.W.2d at 659; Love, 982 S.W.2d at 944.
        An 
appellate court should reverse the trial court’s decision only if an abuse of 
discretion is shown. Love, 982 S.W.2d at 944. The court must consider the 
following factors in determining the appropriate sanction: (1) the nature and 
degree of the professional misconduct for which the respondent is being 
sanctioned; (2) the seriousness of and circumstances surrounding the 
professional misconduct; (3) the loss or damage to clients; (4) the damage to 
the profession; (5) the assurance that those who seek legal services in the 
future will be insulated from the type of professional misconduct found; (6) the 
profit to the attorney; (7) the avoidance of repetition; (8) the deterrent 
effect on others; (9) the maintenance of respect for the legal profession; (10) 
the conduct of the respondent during the course of the CLD action; (11) the 
trial of the case; and (12) other relevant evidence concerning the respondent's 
personal and professional background. Tex. 
R. Disciplinary P. 3.10; Kilpatrick, 874 S.W.2d at 659; Curtis, 
20 S.W.3d at 235.
        Although 
a prior State Bar grievance committee determined that Rodgers did not violate 
the version of the trade name rule in effect in 1994—which did not include the 
prohibition against advertising under a trade name—a grievance committee 
decision not to prosecute has no res judicata or collateral estoppel effect,[4] which Rodgers concedes.  In addition, the State Bar 
was not a party to the 1997 settlement with Southwestern Bell, and there is no 
evidence that it agreed the advertisement did not violate the advertising 
rules.  See Kilroy v. Kilroy, 137 S.W.3d 780, 787 (Tex. 
App.—Houston [1st Dist.] 2004, no pet.) (holding that one of multiple parties 
who did not sign rule 11 agreement between other parties was not bound by 
agreement).  Furthermore, the trial court noted that the ARC gave Rodgers 
an opportunity to submit the advertisement for review in order to comply with 
the filing requirement, but he refused to do so.  Finally, Rodgers admitted 
that he probably would have changed his advertising to appease the ARC or 
discontinued it altogether if CLD had sued him timely. In light of the 
foregoing, we cannot conclude that the trial court abused its discretion in 
imposing a two-year, fully probated suspension against Rodgers.
        Accordingly, 
we overrule Rodgers’s sixth issue.
                                         Conclusion
        Having 
overruled Rodgers’s issues on appeal, we affirm the trial court’s judgment.
  
  
                                                                  TERRIE 
LIVINGSTON
                                                                  JUSTICE
  
 
PANEL B:   LIVINGSTON, 
DAUPHINOT, and WALKER, JJ.
 
DELIVERED: September 23, 2004


NOTES
1.  
Yet Rodgers concedes that this is not required in order for a statute placing 
boundaries on advertising to pass constitutional muster.  See, e.g., In 
re R.M.J., 455 U.S. 191, 202, 102 S. Ct. 929, 937 (1982) (holding that 
regulation is permissible when an advertisement is inherently likely to deceive 
or has a history of being deceptive).
2.  
In his answer, Rodgers placed this contention under the heading of affirmative 
defense.
3.  
Rodgers does not challenge the jury’s failure to find in his favor on this 
question.
4.  See, 
e.g., Gonzalez v. State Bar of Texas, 904 S.W.2d 823, 830-31 (Tex. 
App.—San Antonio 1995, writ denied).